PINEVILLE WATER CO., Inc., v. BRADSHAW et al.

Court of Appeals of Kentucky.

Oct. 16, 1953.

Rehearing Denied April 23, 1954.

306

Logan E. Patterson, James S. Wilson, Pineville, for appellant.

H. H. Owens, Barbourville, for appellees.

CULLEN, Commissioner.

The dwelling house of Fred and Marie Bradshaw, in Pineville, was destroyed by fire on January 26, 1952. The Bradshaws sued the Pineville Water Company for damages, alleging that the company negligently failed and refused to provide sufficient water pressure at the fire hydrant, as a result of which the fire department was unable to extinguish the fire. The case was tried before a jury and a verdict for $1,000 was returned in favor of the Bradshaws. The water company appeals from the judgment entered upon the verdict.

At the close of the plaintiffs' evidence, and again at the close of all the evidence, the water company moved for a directed verdict, which motions were overruled. After the verdict, the company moved for judgment notwithstanding the verdict, which also was overruled. The company maintains, on appeal, that it was error to overrule these motions.

Under the rule stated in Roe v. Gentry's Ex'x, 290 Ky. 598, 162 S.W.2d 208, if a motion for a directed verdict has erroneously been overruled, the court may not thereafter grant a motion for judgment notwithstanding the verdict. Therefore, the first question before us is whether the

motions for a directed verdict should have been granted.

The basis for the motions was that the plaintiffs had neither alleged nor proved a breach of contract by the water company, which was necessary for them to do in order to sustain a recovery. The motions for a directed verdict properly raised the questions of the sufficiency of the pleadings and of the evidence. Horton v. Louisville & N. R. Co., 199 Ky. 279, 250 S.W. 983.

The company is correct in its contention that a citizen may recover from a water company, in cases of this character, only upon a breach of contract theory and not upon a tort theory. Nerren v. Kentucky Water Service Co., 313 Ky. 151, 230 S.W.2d 615; Mountain Water Co. v. Davis, 195 Ky. 193, 241 S.W. 801.

Upon examining the Bradshaws' petition, we find that it does not allege a breach of contract. The court permitted evidence to be introduced upon the trial concerning the contract between the water company and the city, but this was done over the company's objection, so it cannot be said that the defect in the pleadings was waived or was cured by the proof. Accordingly, the motions for a directed verdict should have been sustained because of insufficiency of the pleadings. However, the only relief which this Court can grant is to reverse the judgment, with directions to grant a new trial. Horton v. Louisville & N. R. Co., 199 Ky. 279, 250 S.W. 983.

Since there may be another trial, with substantially similar evidence, we think it is proper for us to pass upon the sufficiency of the evidence to establish a breach of contract. See Horton v. Louisville & N. R. Co., 199 Ky. 279, 250 S.W. 983.

The contract between the water company and the city required the company, among other things, to maintain a constant pressure at the pump station of not less than 80 pounds per square inch; to install

mains and fire hydrants and "furnish water through same for the purpose of extinguishing fires," and "maintain same in good condition for immediate use for said purpose." There was no specific requirement as to the pressure to be maintained at any fire hydrant.

The hydrant near the Bradshaws' home was about a mile and a half from the pump station. At the time of the fire, the fire department ran 450 feet of hose from the hydrant to the house. The evidence was that for a few minutes there was pressure sufficient to throw a stream 25 feet from the nozzle, and then the pressure "went practically dead," so that the water barely trickled from the nozzle.

The water company introduced pressure charts from the recording gauge at the pump station, which showed that on the day of the fire the pressure at the pump station was never below 90 pounds per square inch. The company argues that its only obligation under the contract was to maintain 80 pounds of pressure at the pump station; it was not required to furnish any specific pressure at the fire hydrants; and it did not contract to furnish sufficient pressure at the fire hydrants to extinguish fires.

The argument of the water company might have some merit except for the fact that the company further introduced in evidence the results of a one-week test made about one month after the fire, which showed that the pressure at the hydrant near the Bradshaws' home was from 69 to 73 pounds when the pressure at the pump station was from 80 to 90 pounds. An engineer introduced by the company testified that such pressure at the hydrant would be "adequate" for a city the size of Pineville. The testimony of the fire chief was that the length of hose run from the hydrant on the day of the fire was such as to cause some loss of pressure at the nozzle, but that with adequate pressure from the hydrant there would have been a sufficient stream from the hose to put out the fire.

In view of the fact that there was clear evidence of practically no pressure at the hydrant at the time of the fire, whereas ac-

cording to the test made by the company there should have been at least 69 pounds of pressure there, we think the jury was justified in believing either that the company did not have the required 80 pounds of pressure at the pump station, notwithstanding the pressure charts to the contrary, or that the company was not maintaining its lines and hydrants in good condition at the time of the fire. We think the evidence of breach of contract was sufficient to go to the jury.

The judgment is reversed, because of the insufficiency of the pleadings, with directions to grant a new trial.