# Ellis v. Birmingham Water Works Company.

*Damages for Loss by Fire for Failure to Furnish Water.*

(Decided June 11, 1914. Rehearing denied June 30, 1914. 65 South. 805.

1. *Negligence; Acts or Omissions Constituting.*—Unless there is a legal duty to act, the omission to act, however willful, is not actionable.

2. *Same; Wantonness.*—The conscious failure by one charged with a duty to exercise due care in the performance of that duty is wantonness.

3. *Waters and Water Courses; Supply; Failure to Furnish; Liability.*—Where the contract is with the municipality there is a want of privity between the property owner and the water company, and the property owner cannot maintain an action against the water company for loss of property by fire proximately resulting from the failure of the water company to provide water or water pressure as required by its contract with the municipality.

[Ellis v. Birmingham Water Works Company.]

Appeal from Birmingham City Court.

Heard before Hon. John C. Pugh.

Action by Rhoda W. Ellis against the Birmingham Water Works Company for damages for loss of property by fire proximately caused by a failure of the water company to supply sufficient water for fire purposes. Judgment for defendant and plaintiff appeals. Affirmed.

McQueen & Ellis and Harsh, Beddow & Fitts, for appellant. The case of *Lovejoy v. Bessemer W. W. Co.,* 146 Ala. 374, is essentially unsound but even if it be sound, the counts state a different cause of action, and defendant is liable for the wanton or intentional wrong as shown by the second count.—*Yarbrough v. Carter,* 60 South. 833. Under the clause of the contract with the city which is set out, defendant is liable to plaintiff for the loss she suffered by reason of its negligence.—21 L. R. A. (N. S.) 1029; 52 La. Ann. 1243; 124 N. C. 328; 57 Fla. 245; 112 Ky. 775; 114 Tenn. 328; 6 L. R. A. (N. S.) 1171; 200 U. S. 57; 57 L. Ed. 201.

Percy, Benners & Burr, for appellee. Nothing new is involved in the present appeal, and plaintiff can gain nothing by charging in the so-called wanton count that the failure to furnish water was intentional or wanton. —*Lovejoy v. Bessemer W. Co.,* 146 Ala. 374; 21 L. R. A. (N. S.) 1021; 226 U. S. 220; 118 Pac. 128; 85 Atl. 349; 174 Fed. 764; *B. R. & E. Co. v. Pinckard,* 124 Ala. 374; *Brown v. St. L. & S. F.,* 55 South. 107; *B. R. L. & P. Co. v. Williams,* 158 Ala. 381; *Sloss-S. S. Co. v. Bibb,* 164 Ala. 67; *So. Ry. v. Smith,* 163 Ala. 182. Plaintiff cannot avail herself of the provision of the contract.—Authorities supra, and 18 Am. St. Rep. 377; 23 L. R. A. 146; 64 S. E. 151; 28 N. Y. Supp. 987.

MAYFIELD, J.—This was an action by the appellant, to recover damages of the appellee, for the loss of property destroyed by fire on account of the Waterworks Company's failure to furnish sufficient water and water pressure with which to put out the fire which destroyed appellant's property.

The complaint contains several counts, but each is grounded upon the Waterworks Company's failure to so furnish sufficient water and water pressure. Some of the counts allege negligent failure to so furnish sufficient water, and others allege the wanton and intentional failure to furnish sufficient water and water pressure. The complaint shows that the plaintiff was a citizen and taxpayer of the city of Birmingham, in which city she owned the property which was destroyed; that the defendant water company furnished water to the city and the residents thereof including the plaintiff, under contract between the Waterworks Company and the city of Birmingham, which contract is set out at length in one of the counts; that the water company had a franchise from the city of Birmingham to use its streets for the purpose of operating a waterworks system therein; and that the said public service corporation negligently failed to supply water, to and through the fire department of the city of Birmingham, sufficient to extinguish the fire; that the defendant had for a long time operated such system of waterworks in that city; and that such system was the only source of water supply, for protection against fire, in the city of Birmingham. The defendant water company demurred to the complaint and to each count thereof. The demurrers raised the question of law whether any liability of the defendant to the plaintiff, for the losses by the fire, was shown in the complaint; whether there was any liability at common law or by statute, or under or by virtue of the contract

with the city to so furnish water. No contract whatever, with the defendant, other than that between the water company and the city of Birmingham, above referred to, is shown or relied upon.

The trial court sustained the demurrers to the complaint, thus holding that the complaint showed no cause of action against the defendant waterworks company. The trial court evidently followed the decision of this court in the case of *Lovejoy v. Bessemer Waterworks Co.,* 146 Ala. 374, 41 South. 76, 6 L. R. A. (N. S.) 429, 9 Ann. Cas. 1068. The cause of action attempted to be set up in each count of the complaint in this case cannot be distinguished from that set up in the *Lovejoy Case.* The allegation that the defendant wantonly or intentionally failed to furnish water and water pressure cannot change the result as to stating a cause of action. If there was no legal duty owing by the defendant water company to the plaintiff to furnish water and water pressure, the failure of which is complained of, then a wanton or intentional failure to so furnish will not change the legal rights of the parties. That no such duty rested upon the water company to furnish such water pressure was expressly held and decided in the *Lovejoy Case, supra,* and that decision seems to be in line with the great number and weight of authority in other states, as well as of the text-writers on the subject.

The omission to act, however willful, is not an actionable wrong unless there is a legal duty to act. Wantonness, as has been said by this court, is the conscious failure by one charged with a duty to exercise due care in the discharge of that duty. At the time of the decision of the *Lovejoy Case,* the question was an open one in this state, and it seems to have been carefully and thoroughly considered by this court, and that case has been followed, quoted, and cited by the courts of a number of other states.

The resultant of the decision of all the courts, state and federal, upon this question, is stated in a note to the Maine case of *Hone v. Presque Water Co.*, 104 Me. 217, 71 Atl. 769, 21 L. R. A. (N. S.) 1021.

We have examined many of the cases and the texts on the subject, and are of the opinion that the note in the above-mentioned case accurately shows the true resultant of these decisions, which is to the effect that the great weight of authority denies the right of a property owner to maintain an action against a water company for loss of property proximately resulting from its failure to provide sufficient water pressure for fire purposes, as is required by its contract with the municipality. The right of action, however, has been upheld by the courts of North Carolina, Kentucky, and Florida, but that the weight of authority is against this holding has been acknowledged by some of these courts. The courts in line with this court, holding that there is no liability, base the holding upon a want of privity between the property owner and taxpayer, and the defendant water company, and that this want of privity prevents the owner from bringing an action, either for breach of contract or for breach of a duty growing out of the contract.

We can only say, what was said in *Hone's Case, supra,* that the rule may now be regarded as settled, and that, while we are not unmindful of the progressive developments of the age, we do not feel inclined to reject the principles established by sound reason and long experience.

As was said in *Lovejoy's Case, supra,* it is impossible at this late day to say anything new upon this subject, and it would be affectation to now attempt an elaborate discussion of the question involved.

Those who desire to further consider the question

may find many cases and texts cited in 6 L. R. A. (N. S.) 431, and in 21 L. R. A. (N. S.) 1022.

Appellant relies upon the decisions of the Supreme Court of the United States as holding to the contrary doctrine; but we think that that court is in line with this court on the subject. In the recent case of *German Alliance Co. v. Home Water Co.*, 226 U. S. 220, 33 Sup. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000, the question received consideration, and the court said:

"The courts have almost uniformly held that municipalities are not bound to furnish water for fire protection. Such was the unquestioned rule when they relied, as some still do, on wells and cisterns as a source of supply; nor was there any increase of liability with the gradual increase of facilities, though, with the introduction of reservoirs, standpipes, pumping stations, and steam engines, cities were frequently sued for damages resulting from an inadequate supply or insufficient pressure. But the city was under no legal obligation to furnish the water; and, if it voluntarily undertook to do more than the law required, it did not thereby subject itself to a new or greater liability.  *  *  *  Whether a right of action arises, out of such a contract, in favor of a taxpayer, is a matter about which there has been much discussion and some conflict in decisions. Although for nearly a century it has been common for private corporations to supply cities with water under this sort of agreement, we find no record of a suit like this prior to 1878, when the Supreme Court of Connecticut, in a brief decision (*Nickerson v. Hydraulic Co.*, 46 Conn. 24 [33 Am. Rep. 1]), held that the property owner was a stranger to the agreement with the municipality, and therefore could not maintain an action against the company for a breach of its contract with the city. Since that time similar suits, some in tort and

some for a breach of the contract, have been brought in many other states. In view of the importance of the question, the subject has been examined and re-examined, the contract subjected to the most critical analysis, and many elaborate opinions have been rendered. They are cited in 3 Dillon on Municipal Corporations, § 1340, and in *Ancrum v. Water Co.*, 82 S. C. 284 [64 S. E. 151, 21 L. R. A. (N. S.) 1029]. * * * The plaintiff urges that, whatever the rule elsewhere, it is entitled to recover under the decision in *Guardian Trust Co. v. Fisher*, 200 U. S. 57 [26 Sup. Ct. 186, 50 L. Ed. 367]. But the facts there differ from those in this record. There the water company had an exclusive right, to use the streets in the city of Greensboro, under an ordinance which, among other things, provided that 'said water company shall be responsible for all damages sustained by the city, or any individual or individuals, for any injury sustained from the negligence of the said company, either in the construction or operation of their plant.'—200 U. S. 58 [26 Sup. Ct. 186, 50 L. Ed. 367]. Buildings were destroyed as a result of the negligent failure of the company to furnish sufficient water while operating its plant. The owner brought suit against the water company in the courts of North Carolina, where it had prevously been settled that such actions could be maintained. He recovered a judgment 'for the tortious injury and damage done to the plaintiff by the negligence of the defendant.'—[*Fisher v. Greensboro Water Supply Co.*] 128 N. C. 375 [38 S. E. 912]; [*Guardian Trust & Deposit Co. v. Greensboro Water Supply Co.* (C. C.)] 115 Fed. 187. * * * The *Fisher Case* could not have decided the primary question as to the right of the taxpayer to sue, for that issue had been finally settled by the state court. It raised no federal question, and was not an issue on the

hearing in this court. Neither did the *Fisher Case* overrule the principle, announced in *National Bank v. Grand Lodge,* 98 U. S. 123, 124, 25 L. Ed. 75, that a third person cannot sue for the breach of a contract to which he is a stranger unless he is in privity with the parties and is therein given a direct interest."

It follows that the judgment of the trial court must be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.

